**IN THE UNITED STATES DISTRICRT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL WIGGINS and TERI STEVENS, individually and for all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>Defendant. | Case No. 2:24-CV-00648-WB |

**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant, Laboratory Corporation of America Holdings ("Labcorp"), by and through undersigned counsel, hereby moves the Court to enter an order compelling Plaintiffs Michael Wiggins and Teri Stevens to submit their claims to binding arbitration and staying this suit pending the conclusion of any arbitral proceedings. The facts and law in support of the motion are more fully set forth in the accompanying Memorandum of Law.

WHEREFORE, Defendant respectfully requests that the Court enter the proposed Order granting Defendant's Motion to Compel Arbitration and Stay Proceedings.

Respectfully submitted,

Date: April 11, 2024

/s/ *Jasmeet K. Ahuja*
Jasmeet K. Ahuja (PA Bar No. 332093)
HOGAN LOVELLS US LLP
1735 Market Street, Floor 23
Philadelphia, PA 19103
Telephone: (267) 675-4667
Fax: (267) 675-4601
Email: jasmeet.ahuja@hoganlovells.com

Allison Holt Ryan (*pro hac vice*)
Adam A. Cooke (*pro hac vice*)
HOGAN LOVELLS US LLP
555 13th Street NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Fax: (202) 637-5910
Email: allison.holt-ryan@hoganlovells.com
Email: adam.a.cooke@hoganlovells.com

*Counsel for Defendant Laboratory Corporation of America Holdings*

**IN THE UNITED STATES DISTRICRT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL WIGGINS and TERI STEVENS, individually and for all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>Defendant. | Case No. 2:24-CV-00648-WB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION**
**<u>TO COMPEL ARBITRATION AND STAY PROCEEDINGS</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................1

BACKGROUND ....................1

A. Labcorp Website ....................1

B. Plaintiffs' Accounts ....................2

C. Plaintiffs' Consent to the User Agreement ....................3

D. Plaintiffs' Consent to the Updated Agreement ....................5

E. Plaintiffs' Breach of the User Agreement ....................7

STANDARD OF REVIEW ....................8

ARGUMENT ....................9

A. Federal Law Favors Enforcing Arbitration Agreements ....................10

B. The Parties Entered into a Valid Agreement to Arbitrate this Dispute ....................11

C. Any Dispute About the Scope of the Parties' Agreement to Arbitrate Is for the Arbitrator ....................16

D. Enforcing the Arbitration Agreement Requires a Stay of Proceedings ....................18

CONCLUSION ....................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegis Grp., Inc. v. Bero*,
No. ELH-22-686, 2023 WL 5989438 (D. Md. Sept. 1, 2023) ....12

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ....10

*Anfibio v. Optio Sols. LLC*,
No. 20-cv-11146-CCC-ESK, 2020 WL 8483808 (D.N.J. Dec. 30, 2020) ....18

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ....10

*Bedell v. Carrow*,
No. 20-3804, 2021 WL 229319 (E.D. Pa. Jan. 22, 2021) ....17

*Bergenstock v. LegalZoom.com, Inc.*,
No. 13 CVS 15686, 2015 WL 3866703 (N.C. Super. Ct., June 23, 2015) ....13

*Bloch v. Bloch*,
693 A.2d 364 (Md. Ct. Spec. App. 1997) ....12

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....16

*Broomall Operating Co. LP v. Eldridge*,
No. 20-2168, 2021 WL 3910723 (E.D. Pa. Aug. 31, 2021) ....12, 13

*Brown v. Fam. Dollar Stores of N.C., Inc.*,
1:21CV977, 2022 WL 3576972 (M.D.N.C. Aug. 19, 2022) ....12

*Burgos v. TransUnion, LLC*,
No. 2:16-cv-06338-JCJ (E.D. Pa. Apr. 24, 2017), ECF No. 40 ....18

*Canteen v. Charlotte Metro Credit Union*,
881 S.E.2d 753 (N.C. Ct. App. 2022) ....15

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
584 F.3d 513 (3d Cir. 2009) ....10

*Chassen v. Fid. Nat'l Fin., Inc.*,
836 F.3d 291 (3d Cir. 2016) ....17

*Clymer v. Jetro Cash & Carry Enters., Inc.*,
334 F. Supp. 3d 683 (E.D. Pa. 2018) ....10

*Corpening v. MoneyLion Inc.*,
No. 3:19-cv-00282-FDW-DSC, 2020 WL 13882091
(W.D.N.C. Apr. 22, 2020) ....................12, 14

*Crump v. MetaSource Acquisitions, LLC*,
373 F. Supp. 3d 540 (E.D. Pa. 2019) ....................12

*Curtis v. Cintas Corp.*,
229 F. Supp. 3d 312 (E.D. Pa. 2017) ....................9

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ....................11

*Deardorff v. Cellular Sales of Knoxville, Inc.*,
No. 19-2642-KSM, 2022 WL 407396 (E.D. Pa. Feb. 9, 2022) ....................16

*Defillipis v. Dell Fin. Servs.*,
No. 3:14-CV-00115, 2014 WL 4198015 (M.D. Pa. Aug. 22, 2014) ....................14

*Dobbs v. Health IQ Ins. Servs., Inc.*,
No. 21-5276, 2022 WL 2974713 (E.D. Pa. July 27, 2022) ....................9

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ....................12, 13

*Gay v. CreditInform*,
511 F.3d 369 (3d Cir. 2007) ....................11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) ....................11

*Hewitt v. Rose Grp.*,
No. 15-5992, 2016 WL 2893350 (E.D. Pa. Mar. 21, 2016) ....................9

*Hine v. LendingClub Corp.*,
No. 2:22-CV-00362-CRE, 2023 WL 8113234 (W.D. Pa. Nov. 22, 2023) ....................13

*Iezzi v. CrossCountry Mortg., LLC*,
No. 23-2827, 2024 WL 37951 (E.D. Pa. Jan.3, 2024) ....................16, 17

*Johnston Cnty. v. R.N. Rouse & Co.*,
414 S.E.2d 30 (N.C. 1992) ....................12

*Kai Peng v. Uber Techs., Inc.*,
237 F. Supp. 3d 36 (E.D.N.Y. 2017) ....................15

*Kirkham v. TaxAct, Inc.*,
No. 23-3303, 2024 WL 1143481 (E.D. Pa. Mar. 15, 2024) ....................8, 14, 17, 18

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
560 F.3d 156 (3d Cir. 2009)....................................................................................11

*Klepper v. SLI, Inc.*,
45 F. App'x 136 (3d Cir. 2002) ..............................................................................18

*Kruzits v. Okuma Mach. Tool, Inc.*,
40 F.3d 52 (3d Cir. 1994)........................................................................................11

*Li v. Georges Media Grp., LLC*,
No. 23-1117, 2024 WL 1550368 (E.D. La. Mar. 7, 2024) ...............................15, 16

*Lloyd v. Hovensa, LLC*,
369 F.3d 263 (3d Cir. 2004)....................................................................................11

*Lloyd v. Retail Equation, Inc.*,
No. 21-17057, 2022 WL 18024204 (D.N.J. Dec. 29, 2022)......................................9

*Lyles v. Chegg, Inc.*,
No. RDB-19-3235, 2020 WL 1985043 (D. Md. Apr. 27, 2020) ............................13

*Mack v. Progressive Corp.*,
No. 23-2430, 2024 WL 1120377 (E.D. Pa. Mar. 14, 2024) ....................................11

*Moreno v. Expedia*,
No. 3:18-CV-105, 2018 WL 3059617 (W.D.N.C. June 20, 2018)............................12, 13, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)...............................................................................................10, 17

*Plazza v. Airbnb, Inc.*,
289 F. Supp. 3d 537 (S.D.N.Y. 2018).....................................................................15

*Provenzano v. Ohio Valley Gen. Hosp.*,
121 A.3d 1085 (Pa. Super. Ct. 2015).....................................................................12

*Ratliff v. CoStar Realty Info., Inc.*,
No. 11-0813, 2011 WL 2680585 (D. Md. July 7, 2011) .........................................13

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010)..................................................................................................10

*Richardson v. Coverall N. Am., Inc.*,
811 F. App'x 100 (3d Cir. 2020) ............................................................................16

*Saleh v. Udemy, Inc.*,
No. 23-02207 (JXN) (JSA), 2024 WL 1231343 (D.N.J. Mar. 21, 2024) ........................8, 9, 18

*Sarah Car Care, Inc. v. LogistiCare Sols.*,
LLC, No. 21-1761, 2024 WL 100199 (E.D. Pa. Jan. 9, 2024) ....................16

*Silfee v. Automatic Data Processing, Inc.*,
696 F. App'x 576 (3d Cir. 2017) ....................1

*Suarez-Valdez v. Shearson Lehman/Am. Express, Inc.*,
858 F.2d 648 (11th Cir. 1988) ....................18

*T.M.C.S., Inc. v. Marco Contractors, Inc.*,
780 S.E.2d 588 (N.C. Ct. App. 2015) ....................12

*Trippe Mfg. Co. v. Niles Audio Corp.*,
401 F.3d 529 (3d Cir. 2005) ....................11

*Zeller-Landau v. Sterne Agee CRT, LLC*,
No. 17-3962, 2018 WL 334970 (E.D. Pa. Jan. 9, 2018) ....................17

**Statutes**

9 U.S.C. § 1 ....................1

9 U.S.C. § 2 ....................10

9 U.S.C. § 3 ....................10

9 U.S.C. § 4 ....................10

18 U.S.C. § 2510 ....................8

28 U.S.C. § 1404 ....................1

Defendant Laboratory Corporation of American Holdings ("Labcorp"), by and through undersigned counsel, submits this Memorandum of Law in Support of its Motion to Compel Arbitration and Stay Proceedings ("Motion"). For the reasons set forth below, the Court should order Plaintiffs to submit the claims set forth in their Class Action Complaint ("Complaint" or "Compl."), ECF No. 2, to individual arbitration and stay this litigation pending the conclusion of those proceedings, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA").[1]

## INTRODUCTION

When Plaintiff Michael Wiggins and Plaintiff Teri Stevens created accounts on Labcorp's website patient portal, they agreed to Labcorp's user agreement, which included an arbitration provision and class action waiver. Plaintiffs expressly acknowledged that they had read, understood, and agreed to these terms. Plaintiffs also consented to an updated version of this user agreement that again contained an arbitration provision and class action waiver, as well as a pre-arbitration informal dispute resolution process. Courts regularly enforce arbitration agreements like this one. Because Plaintiffs agreed to arbitrate their claims, the Court should compel Plaintiffs to honor that agreement and stay this action pending completion of individual arbitration proceedings.

## BACKGROUND

### A. Labcorp Website

Labcorp is a leading provider of clinical laboratory services. Compl. ¶ 12. Labcorp

[1] The instant Motion satisfies Labcorp's obligation to respond to the Complaint at this stage of the case. "Arbitrability is a 'gateway' issue, so 'a court should address the arbitrability of the plaintiff's claim *at the outset* of the litigation.'" *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017) (citation omitted). In the event that the Motion is denied and its appeal rights are exhausted, Labcorp reserves all rights to seek transfer of this suit to the United States District Court for the Middle District of North Carolina, pursuant to 28 U.S.C. § 1404(a), and to seek dismissal of Plaintiffs' claims.

operates a public-facing website, https://www.labcorp.com/, through which patients can access Labcorp's patient portal, https://patient.labcorp.com/, ("Labcorp Patient," and collectively with https://www.labcorp.com, "the Website"), that enables patients to schedule tests, review test results, and pay bills. *Id.* ¶¶ 12, 43-53, 70, 76. Users can also register for an account on Labcorp Patient. *See id.* ¶ 43; Declaration of Lori Crozier ("Crozier Decl.") ¶ 2. In order to do so, Labcorp patients must provide certain information, such as their name and email address, and they must affirmatively indicate that they have read, understood, and agreed to terms governing their access to and use of the Website, as discussed, *infra*. *See* Crozier Decl. ¶¶ 4-5.

**B. Plaintiffs' Accounts**

Plaintiff Wiggins alleges that he has been a Labcorp patient since at least 2016. Plaintiff Stevens alleges that she has used Labcorp services since at least 2011. Compl. ¶¶ 13, 14. Both allege that they have used the Website to "schedule appointments, request information on specific medical services, view test results, access [their] doctor's notes, and make payments for medical services." *Id.* The Complaint further alleges that "an existing patient who visited Labcorp's website to schedule an appointment would first click the 'Patient Login' button at the top of Labcorp's home screen." *Id.* ¶ 43. Two paragraphs later, the Complaint purportedly shows that Plaintiff Stevens was logged into her patient account when allegedly trying to schedule an appointment. *Id.* ¶ 45. That would have been possible only if Plaintiffs had created and maintained accounts.

Plaintiffs' above allegations are consistent with Labcorp's internal business records. Labcorp maintains logs that record when "a user creates an account and also when a user accesses their account and takes some other action, such as viewing test results[.]" Crozier Decl. ¶ 5. Labcorp's logs show that both Plaintiffs created accounts, which they have each maintained for

multiple years to utilize Labcorp's online services. *See id.* ¶¶ 5-6; *see also* Ex. A (Stevens logs); Ex. B (Wiggins logs); Ex. C (Stevens patient dashboard); Ex. D (Wiggins patient dashboard). Specifically, Plaintiff Stevens created an account on December 28, 2019, and Plaintiff Wiggins created an account on January 12, 2022. Crozier Decl. ¶ 7; *see also* Ex. A (reflecting "REGISTRATION_SUCCESS" entry on December 28, 2019); Ex. B (same on January 12, 2022). Both accounts remain active, and Plaintiffs have continued to access their accounts in recent months. Crozier Decl. ¶¶ 14-16.

### C. Plaintiffs' Consent to the User Agreement

Although Plaintiffs created their Labcorp Patient accounts approximately two years apart, their sign-up experience was substantively the same. To register for the accounts, both Plaintiffs provided certain information, such as their name, address, phone number, and an email address. *See* Ex. E (December 28, 2019 Registration Page); Ex. F (January 12, 2022 Registration Page). And, critically, both Plaintiffs affirmatively checked a box confirming that they "read, understand, and agree to the LabCorp Terms of Use and Web Privacy Statement." *Id.* After checking this box, Plaintiffs completed the account registration process by clicking a separate "Create an Account" button, which appeared at the bottom of the page. *Id.*; *see also* Crozier Decl. ¶¶ 8-9.

At all relevant times, the phrases "Terms of Use" and "Web Privacy Statement" were offset in blue font, contrasting with the white background and surrounding black text, which made them distinct and indicated that they were clickable hyperlinks. *See* Ex. E; Ex. F. When clicked, the hyperlinked term "Terms of Use" presented users with a copy of Labcorp's then-operative user agreement ("User Agreement"), Crozier Decl. ¶ 10, which, among other things, included an arbitration provision and class action waiver, as well as reserved to Labcorp the right to amend the

agreement's terms. *See* Ex. G (User Agreement, dated December 28, 2019); Ex. H (User Agreement, dated January 12, 2022).

The User Agreement prominently notified potential account holders that assenting to its terms obligated them to arbitrate disputes with Labcorp. The third introductory paragraph previewed—in bold and enlarged text—that "**Section 14 of this Agreement contains a mandatory arbitration provision that requires the use of arbitration on an individual basis**." Ex. G; Ex. H. Section 14 of the User Agreement set forth in more detail the parties' mutual obligation that "any dispute, claim or controversy arising out of or relating in any way to this agreement or the patient portal shall be finally decided by binding arbitration under the Consumer Arbitration Rules of the American Arbitration Association." *Id.* § 14 (emphasis omitted).[2] The arbitration provision also contained a class action waiver, which provided that account holders (such as Plaintiffs) and Labcorp each agreed that they could "bring claims against the other only in [their] or its individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." *Id.* (emphasis omitted).

Under the User Agreement, Labcorp had the express right to amend the terms. *Id.* § 3. This provision specified that an amendment would become "effective immediately upon providing notice of the changes to" account holders when they logged into their account. *Id.* Account holders could "agree to comply with, and be bound by, the modified Agreement" either by (i) "continuing to use or access the Patient Portal after receiving notice of the changes as described above" or (ii)

[2] Notably, the Consumer Rules of the American Arbitration Association ("AAA Rules") empower the arbitrator to resolve any disputes regarding the scope of the parties' arbitration agreement. Rule R-14(a) is unambiguous: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* Ex. L.

"not requesting to terminate your Patient Portal account within seven (7) calendar days after receiving a notice of the change[.]" *Id.*

**D. Plaintiffs' Consent to the Updated Agreement**

On May 9, 2023, Labcorp published a revised version of the User Agreement on the Website (the "Updated Agreement"), which contained three provisions relevant here. Crozier Decl. ¶ 11; *see also* Ex. I (Updated Agreement). *First*, the Updated Agreement again included an arbitration clause and class action waiver. The arbitration clause was previewed at the top of the Updated Agreement in bold text, covering "any dispute, claim, or controversy between [Labcorp and Labcorp Patient account holders], including any past, currently pending, existing, or future dispute or disagreement," with certain exceptions not at issue in this case. Ex. I § 13.

*Second*, the amended arbitration provision included a pre-arbitration, informal dispute resolution process, requiring any party that seeks to initiate arbitration proceedings to first "notify the other in writing of any dispute so that the parties can attempt in good faith to resolve the dispute informally." *Id.* In the event that Labcorp and the individual could not "agree how to resolve the dispute within 45 days after the notice is received by the other party," either party could proceed by "commenc[ing] an arbitration proceeding[.]" *Id.*

*Third*, the Updated Agreement incorporated by reference the then-controlling version of Labcorp's "Terms and Conditions," Crozier Decl. ¶ 12, which "gover[n] access to and use of websites and online applications operated by Labcorp." Ex. I. The Updated Agreement offset the phrase "Terms and Conditions" in blue font to indicate that the text was a clickable hyperlink. *Id.* When clicked, the hyperlink led the account holder to the effective version of the Terms and Conditions, which contained, among other things, a choice-of-law provision. *See* Crozier Decl., ¶ 12; Ex. J (Terms and Conditions) § 21. That provision specified that account holders "agree that

the statutes and laws of the State of North Carolina, without regard to any principles of conflicts of law, will apply to . . . all matters relating to your access to or use of the Online Services." Ex. J § 21.[3]

In addition to publishing the Updated Agreement to the Website, Labcorp communicated the Updated Agreement to account holders. When account holders accessed their accounts for the first time on or after May 9, 2023, a pop-up message (the "Pop-Up") appeared. Crozier Decl. ¶ 13; *see* Ex. K (Pop-Up representation). As shown in the graphic below, account holders who logged into their accounts after the Updated Agreement was published were presented with a notice alerting them of an "IMPORTANT UPDATE" related to "Changes to [Labcorp's] Patient Portal User Agreement." Ex. K. Below that notification, the Pop-Up advised that account holders can "review the modified agreement anytime on [Labcorp's] website." *Id.* Account holders could review the Updated Agreement by clicking the "Review Agreement" button, which appeared just underneath this notice in a distinct blue color. *Id.* Or, in the alternative, they could close the Pop-Up by clicking the "X" in the top-right corner. *Id.* Until they affirmatively selected one of those options, account holders could not take further action on Labcorp Patient. Crozier Decl. ¶ 13.

[3] The Terms and Conditions defined "Online Services" to include "www.labcorp.com and all other websites and online applications operated by" Labcorp. *See* Ex. J.




**Ex. K**: Pop-Up Representation

Both Plaintiffs accessed their accounts after the Pop-Up was transmitted to existing account holders. *See* Ex. A; Ex. B. Plaintiff Stevens did so on May 12, 2023. Crozier Decl. ¶ 14. Accordingly, she would have been presented with the Pop-Up no later than that date. *Id.* She accessed her account on five additional occasions in May 2023 alone, and she continued to do so several times over the following months, including as recently as December 17, 2023. *See* Ex. A.

Likewise, after publication of the Updated Agreement, Plaintiff Wiggins accessed his account on November 30, 2023, and, not later than that date, would have been presented with the Pop-Up. Crozier Decl. ¶ 15. Plaintiff Wiggins continued to access his account on multiple occasions after that date, including as recently as January 2, 2024. *See* Ex. B. Neither Plaintiff could have continued to use their accounts on or after May 9, 2023, without being given notice of the Updated Agreement via the Pop-Up. *See* Crozier Decl. ¶ 13.

### E. Plaintiffs' Breach of the User Agreement

Instead of pursuing arbitration as required by the User Agreement and Updated Agreement, Plaintiffs filed this putative class action on February 13, 2024, purportedly on behalf of "thousands of other [Labcorp] patients" who used Labcorp's Website. Compl. ¶ 1; *see also id.* ¶¶ 2, 34. Neither Plaintiff notified Labcorp of their intention to initiate this suit, worked with Labcorp to try

to resolve the dispute informally, or initiated arbitration proceedings. In the Complaint, Plaintiffs allege that Google Analytics transmitted "existing patient[s']" interactions with Labcorp Patient, such as when patients log-in to their Labcorp accounts or schedule appointments for testing services. *Id.* ¶ 43; *see also id.* ¶¶ 44-45, 49-53. Based on these allegations, Plaintiffs assert a claim under the federal wiretap statute, 18 U.S.C. § 2510, breach of contract, as well as a host of other common law claims. *See* Compl. ¶¶ 142-93. These claims are plainly subject to Plaintiffs' agreement to arbitrate.

**STANDARD OF REVIEW**

The evidentiary standard used to review a motion to compel arbitration "depends on the pleadings." *Kirkham v. TaxAct, Inc.*, No. 23-3303, 2024 WL 1143481, at *3 (E.D. Pa. Mar. 15, 2024). "'[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that . . . a party's claims are subject to an enforceable arbitration clause,'" the motion to dismiss standard applies. *Id.* (citation omitted). Conversely, if "'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate,'" or "'the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement," the summary judgment standard set forth in Rule 56 governs. *Id.* (citation omitted).

Here, the motion to dismiss standard controls because the User Agreement and Updated Agreement, and the arbitration provisions they contain, are incorporated by reference in the Complaint and are integral to Plaintiffs' claims. *See, e.g.*, Compl. ¶¶ 3, 7-8, 13-14, 42-45, 70, 76, 163. Plaintiffs' failure to expressly cite the arbitration provisions is immaterial. *See, e.g.*, *Saleh v. Udemy, Inc.*, No. 23-02207 (JXN) (JSA), 2024 WL 1231343, at *3-4 (D.N.J. Mar. 21, 2024) (applying Rule 12(b)(6) standard even though plaintiff did not cite arbitration clause because

contract was "integral" and plaintiff sought "relief as a customer/subscriber of [defendant]"); *Lloyd v. Retail Equation, Inc.*, No. 21-17057, 2022 WL 18024204, at *7 (D.N.J. Dec. 29, 2022) (applying Rule 12(b)(6) where plaintiff's "theory of liability . . . necessarily implicate[d]" defendant's terms of use and its arbitration agreement); *Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 315 (E.D. Pa. 2017) (applying 12(b)(6) standard even where plaintiff did "not mention the [arbitration agreement] in his Complaint" because "it is clearly integral to his claims"); *Hewitt v. Rose Grp.*, No. 15-5992, 2016 WL 2893350, at *2 n.1 (E.D. Pa. Mar. 21, 2016) ("It would frustrate the purposes of the Federal Arbitration Act if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints.").[4]

## ARGUMENT

Plaintiffs entered into valid arbitration agreements with Labcorp when they created Labcorp Patient accounts. They reaffirmed these agreements just last May, when they were given notice of and consented to the updated terms. The agreement to arbitrate is plain: (i) Plaintiffs must pursue any disputes with Labcorp on an individual basis in arbitration proceedings; and (ii) the arbitrator, rather than the Court, must address the scope of that agreement. Accordingly,

---

[4] Even if the summary judgment standard controlled, the result would be the same. Labcorp has proffered evidence demonstrating: (1) Plaintiffs acknowledged that they read, understood, and agreed to an arbitration agreement and class action waiver when they created Labcorp Patient accounts; (2) Labcorp communicated an update to that agreement to Plaintiffs in a manner consistent with its contractual obligations; and (3) Plaintiffs manifested their assent to that amendment when they continued to access and use their accounts after receiving notice of the update. Plaintiffs cannot offer any contradictory evidence, and thus, they cannot create a genuine dispute of material fact. *See, e.g.*, *Dobbs v. HealthIQ Insur. Servs., Inc.*, No. 21-5276, 2022 WL 2974713, at *3 (E.D. Pa. Jul. 27, 2022) (granting motion to compel arbitration where plaintiff's "conclusory statement that he did not enter into any agreement" with defendant was insufficient to generate a genuine dispute of material fact).

pursuant to the FAA, the Court should order Plaintiffs to arbitrate their claims and stay this action pending completion of individual arbitration proceedings.

**A. Federal Law Favors Enforcing Arbitration Agreements**

Section 2 of the FAA requires that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity[.]" 9 U.S.C. § 2. Where one party ignores its obligation to arbitrate, the other party may petition the court for "an order directing that . . . arbitration proceed in the manner provided for in [the parties'] agreement." *Id.* § 4. When such a petition is made, the FAA directs that courts "shall" stay the action until the "arbitration has been had in accordance with the terms of the agreement." *Id.* § 3.

There is a strong federal policy in favor of arbitration. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). Arbitration agreements are placed "on equal footing with other contracts," *Concepcion*, 563 U.S. at 339, and courts are to "rigorously enforce" arbitration agreements "according to their terms." *Am. Express Co., v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also Clymer v. Jetro Cash & Carry Enters., Inc.*, 334 F. Supp. 3d 683, 689-90 (E.D. Pa. 2018)). This extends to the parties' ability to delegate "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010) (citation omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In light of these principles, a district court's review of a motion to compel arbitration is narrow. Where, as here, the parties "delegate threshold arbitrability questions to the arbitrator,"

courts "may not override" that choice, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019), and a district court's review is limited to the question of whether "a valid agreement to arbitrate exists," *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Put another way, the FAA's express language "leaves no place for the exercise of discretion[.]" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The district court must enforce the parties' agreement and stay litigation pending conclusion of the arbitration. *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004); *Mack v. Progressive Corp.*, No. 23-2430, 2024 WL 1120377, at *6 (E.D. Pa. Mar. 14, 2024).

**B. The Parties Entered into a Valid Agreement to Arbitrate this Dispute**

To determine whether there is an agreement to arbitrate, it is appropriate to look to state law. *See Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) ("Because arbitration is a matter of contract," courts "turn to ordinary state-law principles that govern the formation of contracts" in order "[t]o determine whether the parties agreed to arbitrate.") (internal quotation marks and citation omitted). In this case, the parties agreed that North Carolina law applies to "all matters relating to . . . access to or use of [Labcorp's] Online Services," including Labcorp Patient. *See* Ex. J § 21; *see also Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007) (explaining parties' freedom "to structure their arbitration agreements as they see fit . . . extends to choice-of-law provisions"); *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (noting that Pennsylvania courts "generally . . . enforce choice of law provisions"). But regardless of what state law applies,[5] the result is the same: Plaintiffs entered into a valid agreement to arbitrate.

[5] The applicable law of Pennsylvania, Maryland, and North Carolina leads to the same outcome. As relevant here, each provides that a contract is formed upon "'(1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration.'"

To be enforceable, "'a contract requires (1) assent; (2) mutuality of obligation; and (3) definite terms.'" *Brown v. Fam. Dollar Stores of N.C., Inc.*, No. 1:21CV977, 2022 WL 3576972, at *2 (M.D.N.C. Aug. 19, 2022); *see also Crump*, 373 F. Supp. 3d at 544 (similar). "Consistent with federal policy," the law favors arbitration and instructs that "any doubt concerning the existence of [an arbitration] agreement must also be resolved in favor of arbitration." *Brown*, 2022 WL 3576972, at *2 (quoting *Johnston Cnty. v. R.N. Rouse & Co.*, 414 S.E.2d 30, 32 (N.C. 1992) (alteration in *Brown*)); *see also Provenzano v. Ohio Valley Gen. Hosp.*, 121 A.3d 1085, 1096 (Pa. Super. Ct. 2015) ("Pennsylvania law endorses the nationally liberal policy favoring arbitration embodied in the Federal Arbitration Act[.]"); *Bloch v. Bloch*, 693 A.2d 364, 367 (Md. Ct. Spec. App. 1997) (explaining that "all doubts" regarding the enforceability of an arbitration provision "are to be resolved in favor of submitting the dispute to arbitration").

Further, "[t]he internet has 'not fundamentally changed'" the law of contract formation. *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483 (9th Cir. 2020) (citation omitted). Online agreements are valid and enforceable so long as the parties "assent to the same thing in the same sense, and their minds meet as to all terms." *Corpening v. MoneyLion Inc.*, No. 3:19-cv-00282-FDW-DSC, 2020 WL 13882091, at *2 (W.D.N.C. Apr. 22, 2020) (quotation marks and citation omitted). It is of no moment whether an internet user "has not actually read the terms of an agreement," so long as he or she was "required to acknowledge an agreement to proceed[.]" *Moreno v. Expedia*, No. 3:18-CV-105, 2018 WL 3059617, at *3 (W.D.N.C. June 20, 2018) (citation omitted); *see also Broomall Operating Co. LP v. Eldridge*, No. 20-2168, 2021 WL 3910723, at *6 (E.D. Pa. Aug. 31, 2021) ("Pennsylvania courts have unwaveringly held that failure

---

*Crump v. MetaSource Acquisitions, LLC*, 373 F. Supp. 3d 540, 544 (E.D. Pa. 2019) (citation omitted); *see also Allegis Grp., Inc. v. Bero*, No. ELH-22-686, 2023 WL 5989438, at *22-23 (D. Md. Sept. 1, 2023) (Maryland law); *accord T.M.C.S., Inc. v. Marco Contractors, Inc.*, 780 S.E.2d 588, 593 (N.C. Ct. App. 2015) (comparison of Pennsylvania and North Carolina law).

to read a contract is not a defense to its enforcement."); *Ratliff v. CoStar Realty Info., Inc.*, No. 11-0813, 2011 WL 2680585, at *6 (D. Md. Jul. 7, 2011) (similar under Maryland law).

In other words, "an offeree [will be] bound by an arbitration clause if 'a reasonably prudent Internet consumer'" would be put on inquiry notice' of the 'agreement's existence and contents.'" *Dohrmann*, 823 F. App'x at 483; *see also Hine v. LendingClub Corp.*, 2:22-CV-00362-CRE, 2023 WL 8113234, at *7 (W.D. Pa. Nov. 22, 2023) (under Pennsylvania law, a plaintiff is put on notice of arbitration provision contained in a clickwrap agreement where "a reasonably prudent Internet user would have seen [it]"); *Lyles v. Chegg, Inc.*, No. RDB-19-3235, 2020 WL 1985043, at *3 (D. Md. Apr. 27, 2020) (similar under Maryland law).

Here, Plaintiffs agreed to arbitrate disputes with Labcorp when they created their respective accounts. In creating accounts, Plaintiffs checked a box affirming they had read, understood, and agreed to the accompanying, hyperlinked policies, including the User Agreement. *See* Crozier Decl. ¶¶ 8-9; Ex. E; Ex. F. Only after agreeing to these terms could Plaintiffs complete the account registration process via the "Create Account" button. *See* Crozier Decl. ¶¶ 8-9. By taking these steps, Plaintiffs manifested their assent to the User Agreement, which obligated them to bring "any dispute, claim or controversy arising out of or relating in any way to this agreement or the patient portal" in "binding arbitration under the consumer arbitration rules of the American Arbitration Association." Ex. G § 14; Ex. H § 14.

Courts routinely enforce "clickwrap agreement[s]" such as this one, where users can "only proceed after acknowledging [the hyperlinked] terms." *Bergenstock v. LegalZoom.com, Inc.*, No. 13 CVS 15686, 2015 WL 3866703, at *6 (N.C. Super. Ct., June 23, 2015); *see also Moreno*, 2018 WL 3059617, at *3 ("[O]nline consumer agreements are valid and enforceable when a user affirmatively acknowledges and agrees to contractual terms by checking a box or clicking a button

as a condition of proceeding with his transaction"); *Corpening*, 2020 WL 13882091, at *4-5 (enforcing arbitration provision where "Plaintiff was required to manifest assent to prior to using Defendants' product, and was not allowed to use the App until he agreed"); *accord Defillipis v. Dell Fin. Servs.*, No. 3:14-CV-00115, 2014 WL 4198015, at *6 (M.D. Pa. Aug. 22, 2014) ("Clickwrap agreements are increasingly common and 'have routinely been upheld.'") (citation omitted).

Indeed, this Court recently enforced an agreement similar to the one here, finding that the clickwrap process puts users on "sufficiently conspicuous notice" of the website's hyperlinked terms. *Kirkham*, 2024 WL 1143481, at *8. There, as here, the plaintiff was "required to check a box indicating" that he agreed to the defendant's applicable policies, which appeared on an "uncluttered screen" and "marked in blue" to indicate that they contained a clickable hyperlink. *Id.* Those same facts are present in this case, and it follows that Plaintiffs also were given "reasonable notice of the [User Agreement], and [they] assented to the arbitration agreement contained therein." *Id.* at *9; *see also Moreno*, 2018 WL 3059617, at *3 (enforcing arbitration provision in a clickwrap agreement).

Plaintiffs again agreed to arbitrate their claims when they were presented with notice of the Updated Agreement and thereafter continued to use Labcorp Patient. *See* Crozier Decl. ¶¶ 10-15; *see also* Ex. I § 13. When the Updated Agreement was published to the Website, Labcorp communicated this change to Plaintiffs by deploying a Pop-Up screen to appear the next time they logged into their accounts. Crozier Decl. ¶ 13. The Pop-Up advised in plain terms that changes had been made to Plaintiffs' agreement with Labcorp, which they could review by clicking on the "Review Agreement" button. *Id.*; *see* Ex. K. Plaintiffs were also prevented from interacting with Labcorp Patient until they either navigated to the Updated Agreement or, if they elected to do so,

closed the Pop-Up. Crozier Decl. ¶ 13. This process was consistent with the modification provision in the User Agreement, which stated that Labcorp could amend the User Agreement, effective "upon providing notice of the changes" to account holders when they accessed their accounts. Ex. G § 3; Ex. H § 3.

Courts regularly enforce such modifications to contractual agreements. A recent decision from the North Carolina Court of Appeals, *Canteen v. Charlotte Metro Credit Union*, 881 S.E.2d 753 (N.C. Ct. App. 2022), is instructive. In that case, a customer entered into an agreement with a credit union to open an account; the agreement contained a modification provision. *Id.* at 754. Years later, the credit union amended the terms to require that the parties arbitrate any disputes and sent the customer an email describing the amendment. *Id.* The court enforced the arbitration provision because the customer had been given notice of the modification in a manner that was consistent with the parties initial agreement, and her failure to opt-out of the modified agreement, coupled with her continued use of her account, manifested her assent to the amendment. *Id.* at 757-58.

That reasoning applies with even more force here. Plaintiffs were given notice of the Updated Agreement via the Pop-Up when they accessed their accounts for the first time after publication of the Updated Agreement. Crozier Decl. ¶ 13. They manifested their assent to and provided consideration for these modified terms by continuing to interact with Labcorp Patient after the Pop-Up had been presented to them. *See* Crozier Decl. ¶¶ 14-16; Ex. A; Ex. B. Courts have upheld similar mechanisms for updating terms. *See, e.g.*, *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 549-50 (S.D.N.Y. 2018) (enforcing modifications to user agreements presented to users when they accessed their accounts after they continued to use the defendant's service); *Kai Peng v. Uber Tech., Inc.*, 237 F. Supp. 3d 36, 51-52 (E.D.N.Y. 2017) (same); *Li v. Georges Media Grp.*,

*LLC*, No. 23-1117, 2024 WL 1550368, at *1, *4 (E.D. La. Mar. 7, 2024) (same). Plaintiffs entered into valid agreements to arbitrate, and this Court should order Plaintiffs to comply with those agreements.

**C. Any Dispute About the Scope of the Parties' Agreement to Arbitrate Is for the Arbitrator**

Finding that valid arbitration agreements exist resolves this Motion because Labcorp and Plaintiffs delegated to an arbitrator any questions regarding the scope of their agreements by incorporating the AAA Rules. The Third Circuit has joined numerous appellate courts in holding that "'incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent [to delegate arbitrability].'" *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 104 (3d Cir. 2020) (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015) (alterations in *Richardson*)). "Incorporation by reference to . . . AAA rules is sufficient because . . . [the] AAA have rules pertaining to their jurisdiction and how they shall have the power to decide issues of arbitrability." *Deardorff v. Cellular Sales of Knoxville, Inc.*, No. 19-2642-KSM, 2022 WL 407396, at *9 (E.D. Pa. Feb. 9, 2022); *see also Sarah Car Care, Inc. v. LogistiCare Sols.*, LLC, No. 21-1761, 2024 WL 100199, at *6 (E.D. Pa. Jan. 9, 2024); *Iezzi v. CrossCountry Mortg., LLC*, No. 23-2827, 2024 WL 37951, at *6 (E.D. Pa. Jan.3, 2024). So too here.

Both the User Agreement and Updated Agreement expressly incorporated the AAA Rules, which delegate questions of arbitrability to the arbitrator. *See* Ex. G § 14; Ex. H § 14 (providing that parties' disputes shall be resolved "by binding arbitration administered by the American Arbitration Association [] under its Consumer Arbitration Rules "); Ex. I § 13 (same). Under those Rules, the arbitrator is empowered "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Ex. L, R-14(a).

Even if the Court were to assess arbitrability, the outcome would not change. This dispute falls well within the ambit of the parties' arbitration agreement, particularly given the federal policy in favor of arbitration. *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 295 (3d Cir. 2016) ("'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'") (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). The Updated Agreement applies to "any dispute, claim, or controversy [arising] between [Labcorp and Plaintiffs], including any past, currently pending, existing, or future dispute or disagreement." Ex. I, § 13. The User Agreement likewise governs "any dispute, claim or controversy arising out of or relating in any way to this agreement or the patient portal." Ex. G, § 14; *see Bedell v. Carrow*, No. 20-3804, 2021 WL 229319, at *3 (E.D. Pa. Jan. 22, 2021) ("Arbitration provisions" that "contain the phrase 'arising out of' are construed broadly") (citation omitted); *Zeller-Landau v. Sterne Agee CRT, LLC*, No. 17-3962, 2018 WL 334970, at *6 (E.D. Pa. Jan. 9, 2018) (describing similar language as "broad").

Plaintiffs' claims arise out of and relate to alleged collection and transmission of information regarding Labcorp patients' use of the Website on the theory that this information amounts to protected health information. *See, e.g.*, Compl. ¶¶ 1-3, 8, 43-45, 49-53. Plaintiffs claim that Labcorp used certain analytics technologies to "intercept[ ]" their "interactions of logging into Labcorp's patient portal," including instances where they allegedly arranged for and reviewed the results of medical tests. *Id.* ¶¶ 70, 76. Thus, irrespective of which version of the arbitration provision the Court considers, Plaintiffs' claims are covered. *See Kirkham*, 2024 WL 1143481, at *2, *8-9 (compelling arbitration of claims challenging defendant's use of third-party analytics technologies in light of agreement that required arbitration of all disputes "arising out of

or related to these Terms or our Services"); *Saleh*, 2024 WL 1231343, at *3-4 (similar). Plaintiffs' claims should be submitted to individual arbitration proceedings.

**D. Enforcing the Arbitration Agreement Requires a Stay of Proceedings**

Where a valid arbitration agreement exists, the FAA's direction is clear: the court "*shall* . . . stay the trial of the action." *Kirkham*, 2024 WL 1143481, at *13 (emphasis added). The Court should stay further proceedings in this case pending arbitration proceedings.

In addition, as set forth in more detail in Defendant's contemporaneously filed Motion to Stay Discovery, the stay should extend to discovery pending a resolution of the instant motion. The Third Circuit has held that district courts must not "unnecessarily subject [parties] 'to the very complexities, inconveniences and expenses of litigation that they determined to avoid.'" *Klepper v. SLI, Inc.*, 45 F. App'x 136, 139 (3d Cir. 2002); (quoting *Suarez-Valdez v. Shearson Lehman/Am. Express, Inc.*, 858 F.2d 648, 649 (11th Cir. 1988) (Tjoflat, J., concurring)). Thus, courts regularly stay discovery when presented with substantially similar circumstances. *See, e.g., Anfibio v. Optio Sols. LLC*, No. 20-cv-11146-CCC-ESK, 2020 WL 8483808, at *2 (D.N.J. Dec. 30, 2020); Order, *Burgos v. TransUnion, LLC*, No. 2:16-cv-06338-JCJ (E.D. Pa. Apr. 24, 2017), ECF No. 40. Labcorp asks this Court to do the same.

**CONCLUSION**

In light of the foregoing, Labcorp respectfully requests that the Court issue an order granting the Motion, compelling arbitration, and staying this action pending the completion of individual arbitration proceedings.

Respectfully submitted,

Date: April 11, 2024

/s/ *Jasmeet K. Ahuja*
Jasmeet K. Ahuja (PA Bar No. 332093)

HOGAN LOVELLS US LLP
1735 Market Street, Floor 23
Philadelphia, PA 19103
Telephone: (267) 675-4667
Fax: (267) 675-4601
Email: jasmeet.ahuja@hoganlovells.com

Allison Holt Ryan (*pro hac vice*)
Adam A. Cooke (*pro hac vice*)
HOGAN LOVELLS US LLP
555 13th Street NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Fax: (202) 637-5910
Email: allison.holt-ryan@hoganlovells.com
Email: adam.a.cooke@hoganlovells.com

*Counsel for Defendant Laboratory Corporation of America Holdings*

**CERTIFICATE OF SERVICE**

I hereby certify on April 11, 2024 the foregoing Motion to Compel Arbitration and Stay Proceedings was filed and served electronically on counsel of record. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

/s/ *Jasmeet K. Ahuja*
Jasmeet K. Ahuja