**IN THE UNITED STATES DISTRICRT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL WIGGINS and TERI STEVENS, individually and for all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>Defendant. | Case No. 2:24-CV-00648-WB |

**DEFENDANT'S REPLY IN SUPPORT OF ITS RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 1

A. The Undisputed Facts Show Plaintiffs Were Given Notice Of And Assented To The User Agreement And The Updated Agreement ........ 1

B. The User Agreement And The Updated Agreement Are Not Unconscionable ........ 6

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alavez v. Brinker Rest. Corp.*,
No. EDCV 16-1450 JGB (SPx), 2016 WL 11746260 (C.D. Cal. Sept. 23, 2016) ..................10

*Boehm-Scharff v. rue21, Inc.*,
No. 2:23-cv-227-NR, 2023 WL 7131003 (W.D. Pa. Oct. 30, 2023) ........................................5

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)....................................................................................................................9

*Caimano v. H&R Block*,
No. 23-3272, 2024 WL 3295589 (E.D. Pa. July 3, 2024) .......................................................3

*Canteen v. Charlotte Metro Credit Union*,
900 S.E.2d 890, 386 N.C. 18 (N.C. 2024) ...................................................................................5

*Caparra v. Maggiano's Inc.*,
No. 14–05722, 2015 WL 5144030 (E.D. Pa. Sept. 1, 2015) ....................................................2

*Caruso v. J&M Windows, Inc.*,
No. 18-770, 2018 WL 4579691 (E.D. Pa. Sept. 24, 2018) ......................................................7

*Curtis v. Cintas Corp.*,
229 F. Supp. 3d 312 (E.D. Pa. 2017) .....................................................................................7, 8

*Deardorff v. Cellular Sales of Knoxville, Inc.*,
No. 19-2642-KSM, 2022 WL 407396 (E.D. Pa. Feb. 9, 2022) .................................................7

*Devine v.Behtesda Softworks, LLC*,
636 F. Supp. 3d 564 (D. Md. 2022) ..........................................................................................5

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020).....................................................................................2, 3

*Focus Music Ent., LLC v. Streamify, LLC*,
No. ELH-18-1241, 2018 WL 6423906 (D. Md. Dec. 5, 2018) ............................................8, 9

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)....................................................................................................................10

*Hine v. LendingClub Corp.*,
No. 2:22-CV-00362-CRE, 2023 WL 8113234 (W.D. Pa. Nov. 22, 2023)...............................3

*Hodge v. Toyota Motor Credit, Corp.*,
No. 1:22-cv-00001-MR-WCM, 2022 WL 2195022 (W.D.N.C. June 17, 2022).......................7

*Holt v. Pennsylvania*,
No. 21-2635, No. 21-2661, 2022 WL 3657183 (3d Cir. Aug. 25, 2022) ....6

*Huber v. Taylor*,
469 F.3d 67 (3d Cir. 2006)....2

*Iezzi v. CrossCountry Mortg., LLC*,
No. 23-2827, 2024 WL 37951 (E.D. Pa. Jan.3, 2024)....7

*Jordan v. Petco Health & Wellness Co.*,
No. 2:21-cv-1858, 2022 WL 4237519 (W.D. Pa. Sept. 14, 2022) ....9

*Kirkham v. TaxAct, Inc.*,
No. 23-3303, 2024 WL 1143481 (E.D. Pa. Mar. 15, 2024) ....1, 2, 3, 4, 7

*Litton Fin. Printing v. NLRB*,
501 U.S. 190 (1991)....10

*Mansfield v. Vanderbilt Mortg. & Fin., Inc.*,
29 F. Supp. 3d 645 (E.D.N.C. 2014)....9

*Market Am., Inc. v. Yang*,
No. 1:17CV897, 2018 WL 3406865 (M.D.N.C. July 12, 2018) ....8

*Mathis v. Lendmark Fin. Servs., LLC*,
No. 7:16-CV-355-FL, 2017 WL 3088376 (E.D.N.C. July 20, 2017)....5

*Moreno v. Expedia*,
No. 3:18-CV-105, 2018 WL 3059617 (W.D.N.C. June 20, 2018)....2, 4

*Porreca v. Rose Grp.*,
No. 13–1674, 2013 WL 6498392 (E.D. Pa. Dec. 11, 2013)....9

*Ratliff v. CoStar Realty Info., Inc.*,
No. 11–0813, 2011 WL 2680585 (D. Md. July 7, 2011)....2

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)....7

*Richardson v. Coverall N. Am., Inc.*,
811 F. App'x 100 (3d Cir. 2020) ....6

*Seme v. Gibbons, P.C.*,
No. 19-857, 2019 WL 2615751 (E.D. Pa. June 26, 2019)....10

*Trimble v. AT&T Mobility, LLC*,
No. 5:23-CV-00038-KDB-DSC, 2023 WL 5493584 (W.D.N.C. Aug. 24, 2023) ....9

*Turner v. Archer W. Contractors, LLC*,
No. ELH-17-2228, 2019 WL 2549433 (D. Md. June 19, 2019)................................................9

*Wallrich v. Samsung Elecs. Am., Inc.*,
106 F.4th 609 (7th Cir. 2024) ...................................................................................6

*Westmoreland v. High Point Healthcare, Inc.*,
721 S.E. 2d 712, 218 N.C. App. 76 (N.C. App. 2012) ..............................................8

*Wilner v. Cedars of Chapel Hill, LLC*,
773 S.E. 2d 333, 241 N.C. App. 389 (N.C. App. 2015) ............................................8

## INTRODUCTION

Plaintiffs' Opposition confirms that Labcorp's Renewed Motion to Compel Arbitration should be granted and this case stayed pending the completion of individual arbitration proceedings. Plaintiffs concede that they created Labcorp Patient accounts, and in doing so, they were presented with and manifested their consent to the User Agreement and the arbitration terms it contained. Plaintiffs also admit that they continued to access these accounts after being notified of the Updated Agreement. Rather than contest these key facts, Plaintiffs advance a handful of arguments to cast doubt on the enforceability of their agreements. First, in the face of this robust record, Plaintiffs assert that they cannot be compelled to arbitrate because they did not have adequate notice of the agreements' terms. Second, Plaintiffs speculate, without ***any*** factual basis, that theories they failed to develop in discovery ***might*** undermine what the record shows. And third, Plaintiffs claim that the agreements are unconscionable because they contain common and enforceable features of arbitration provisions. These arguments are meritless and fail to create any genuine dispute of material fact. Plaintiffs should be required to arbitrate their claims.

## ARGUMENT

### A. The Undisputed Facts Show Plaintiffs Were Given Notice Of And Assented To The User Agreement And The Updated Agreement

Both the law and the uncontested facts show that Plaintiffs agreed to arbitrate the claims they assert in this action. Plaintiffs agree that for arbitration terms to be enforceable, the record need only evince "'reasonably conspicuous notice'" and "'unambiguous . . . assent'" to the same. Opp. at 15 (quoting *Kirkham v. TaxAct, Inc.*, No. 23-3303, 2024 WL 1143481, at *8 (E.D. Pa. Mar. 15, 2024) (alteration in Opp.)). That is precisely what the record demonstrates. Plaintiffs admit they created Labcorp Patient accounts by checking a box next to language indicating they "read, understand and agree to the Labcorp Terms of Use"—which was made available to them

via a clickable hyperlink—and then clicking the "Create Account" button directly below that text. *See* Mot. at 2-3; Mot. Ex. I; Mot. Ex. J; *see also* Opp. Ex. C ¶ 3; Opp. Ex. D ¶ 3. Had the Plaintiffs clicked that hyperlink, they would have been presented with the User Agreement, which in the third introductory paragraph, alerted readers that it contained **"a mandatory arbitration provision that requires the use of arbitration on an individual basis**[.]" *See* Mot. Ex. M at 1; Mot. Ex N. at 1 (same). They are therefore bound by the arbitration provision in that agreement.

Plaintiffs try to resist this conclusion by arguing that they did not understand they were agreeing to arbitrate. *See* Opp. at 7-8, 13, 15-16. That contention is contrary to well-settled North Carolina, Pennsylvania, and Maryland law,[1] which provides that parties are bound by their agreements "'without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains.'" *Caparra v. Maggiano's Inc.*, No. 14–05722, 2015 WL 5144030, at *6 (E.D. Pa. Sept. 1, 2015) (citation omitted); *Moreno v. Expedia*, No. 3:18-CV-105, 2018 WL 3059617, at *3 (W.D.N.C. June 20., 2018) (same under North Carolina law); *Ratliff v. CoStar Realty Info., Inc.*, No. 11–0813, 2011 WL 2680585, at *6 (D. Md. July 7, 2011) (same under Maryland law); *accord Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 832 (S.D.N.Y. 2020) ("By signing up for Postmates' service, Feld manifested assent to the TOS, even if she did not click on the hyperlink to read the contract."). Plaintiffs' actual knowledge is beside the point; it is sufficient that Labcorp provided Plaintiffs with reasonably conspicuous notice of the arbitration terms via clear hyperlinks directly next to a check box that Plaintiffs had to click to create accounts. *See* Mot. at 13-15. Courts regularly enforce

[1] Plaintiffs agree that the laws of North Carolina and Pennsylvania are similar regarding the issue of contract formation, *see* Opp. at 14, and they do not dispute that Maryland law is the same, *see* Mot. at 12 n.5. Thus, the Court may rely on authority from all three states when analyzing this issue. *Id.* (citing *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006)). However, the Court should assess Plaintiffs' unconscionability arguments in accordance with North Carolina law consistent with the parties' agreement. *See* Mot. at 16 n.7; *see also Kirkham*, 2024 WL 1143481, at *6 n.3.

arbitration provisions based on the ***same*** notice and consent process. *See, e.g.*, *Caimano v. H&R Block*, No. 23-3272, 2024 WL 3295589, at *9-10 (E.D. Pa. July 3, 2024); *see also* Mot. at 13-15.

Plaintiffs quibble that the hyperlinked text on the account registration page was not sufficiently conspicuous, relying on this Court's decision in *Kirkham v. TaxAct, Inc.*, 2024 WL 1143481 (E.D. Pa. Mar. 15, 2024). *See* Opp. at 7, 11-14. But *Kirkham* is on all fours with this case. There, as here, "to create an account, [the plaintiff] had to check a box indicating: 'I agree to the [defendant's] Terms of Service & Terms of Use, and have read and acknowledge the Privacy Statement.'" 2024 WL 1143481, at *8. There, as here, "[t]he Terms of Service [were] marked in blue as typically indicates as a hyperlink," and stood in contrast to the white background and black text surrounding it. *Id.*[2] And there, as here, "[t]he text [was] small but legible . . . and clearly indicate[d] that checking the box constitutes assent to its terms." *Id.*

That *Kirkham* noted the text sat "in the center of an uncluttered screen" is a distinction without a difference. *Id.* Here, the hyperlinked text sat below text fields, which Plaintiffs were required to populate, directly next to a box, which Plaintiffs were required to check, and just above the "Create Account" button, which Plaintiffs were required to click. *See* Mot. at 3-4; *see also* Mot. Ex. I; Mot. Ex. J. That the hyperlinks were not in the screen's center is irrelevant. *See Hine v. LendingClub Corp.*, No. 2:22-CV-00362-CRE, 2023 WL 8113234, at *7 (W.D. Pa. Nov. 22, 2023) (finding that hyperlinked policies "in immediate proximity to the electronic [ ] checkbox" would have been "readily apparent to a reasonably prudent Internet user").

Plaintiffs next assert that the full text of the arbitration terms should have been provided to "everyone who visited" the account registration page and that individuals should have had to

[2] Some text on the pages was offset in light blue, but only hyperlinked text on each page appeared in dark blue. *See* Mot. Ex. I; Mot. Ex. J; *see also Feld*, 442 F. Supp. 3d at 831 (hyperlinks were sufficiently prominent where they appeared in "a darker, bolder font than the rest of the text").

"move through" the text "before filling the Authorization checkbox." Opp. at 16. But that tacks on requirements the law does not impose. The consent process that the Court found sufficient in *Kirkham* did ***not*** "mention" that TaxAct's terms "contain[ed] arbitration and class waiver provision" or "describe the effect of these provisions before allowing users" to proceed. *Id.*[3] Rather, the Court correctly found that TaxAct provided "sufficiently conspicuous notice of its Terms of Service" because it required users to check a box indicating that they agreed to TaxAct's terms of use, which were made available to Plaintiffs with a clickable hyperlink. *See Kirkham*, 2024 WL 1143481, at *8-9. The same is true here.

Plaintiffs likewise concede that they continued to access their Labcorp Patient accounts after the Updated Agreement was communicated to them via an in-service Pop-Up message. *See* Mot. at 6-9; Mot. Ex. C; Mot. Ex. D; Mot. Ex. T; *see also* Opp. Ex. C ¶¶ 6-7; Opp. Ex. D ¶¶ 6-7. That agreement also contained a prominent alert that it too contained an arbitration provision. *See* Mot. Ex. R at 1. Nonetheless, Plaintiffs admit that they likely closed the Pop-Up message in lieu of reading the Updated Agreement. *See* Opp. Ex. C ¶ 8 (admitting that Plaintiff Stevens did not "click on the 'review agreement' button, determine that it was a functioning button, open this document, [or] read this document"); Opp. Ex. D ¶ 8 (same for Plaintiff Wiggins). That Plaintiffs chose not to read the Updated Agreement, even after Labcorp notified them of "Changes to [Its] Patient Portal User Agreement," which were made easily accessible to Plaintiffs in a clickable hyperlink, *see* Mot. Ex. T, is irrelevant. *Cf. Moreno*, 2018 WL 3059617, at *3 (finding constructive knowledge where "the user" was "required to acknowledge [an agreement's] to proceed"). Because the changes included in the Updated Agreement fell within the same "universe of terms"

[3] Plaintiffs' suggestion that, unlike TaxAct's account creation page, Labcorp's "Registration page does not say that users accept its Terms of Use by 'continuing to use' the website" or that "if users refuse its terms, they must stop using the website," is misleading. Opp. at 13. This language was used in TaxAct's terms of use, ***not*** its account creation page. *Kirkham*, 2024 WL 1143481, at *2.

as those set forth in the User Agreement, and because Plaintiffs continued to use their Labcorp Patient accounts after they were provided notice, the Updated Agreement constitutes "a binding and enforceable agreement." *Canteen v. Charlotte Metro Credit Union*, 900 S.E.2d 890, 898, 386 N.C. 18, 28 (N.C. 2024); *see also* Mot. at 17-18. Plaintiffs offer no authority to the contrary.

Unable to elide this straightforward application of the law to the facts, Plaintiffs speculate that perhaps there ***might*** be discrepancies in this record. First, Plaintiffs question whether Labcorp's evidence of its historical account registration page ***might*** be inaccurate, in light of an unauthenticated exhibit containing what appears to be photographs taken of the Website's ***current*** registration page. *See* Opp. at 4; Opp. Ex. B. Second, Plaintiffs assert that the clickable hyperlinks ***might*** not have been functional at the time they created Labcorp Patient accounts or navigated through the Pop-Up. Opp. at 15. Third, Plaintiffs suggest that Labcorp's business records showing that Plaintiffs completed the account registration process and consented to be bound to the User Agreement ***might*** instead pertain to some other, unknown account document. *See id.* at 17.

This "conclusory speculation," unsupported by concrete evidence, "cannot raise a genuine dispute of fact." *Boehm-Scharff v. rue21, Inc.*, No. 2:23-cv-227-NR, 2023 WL 7131003, at *7 (W.D. Pa. Oct. 30, 2023); *see also Mathis v. Lendmark Fin. Servs., LLC*, No. 7:16-CV-355-FL, 2017 WL 3088376, at *3 (E.D.N.C. July 20, 2017) (similar); *Devine v.Behtesda Softworks, LLC*, 636 F. Supp. 3d 564, 569 (D. Md. 2022) (similar). Plaintiffs are also just wrong. They do not (because they cannot) dispute that the version of the registration page Labcorp submitted shows what they would have seen at the time they created Labcorp Patient accounts on December 28, 2019 and January 12, 2022, respectively. *See* Crozier Decl., ¶¶ 10-11; Mot. Ex. I; Mot. Ex. J; *see also* Mot. at 3-5. They do not (because they cannot) dispute that the hyperlinks functioned as designed; to the contrary, Plaintiffs admit that they elected not to click on them. *See* Mot. at 3-4;

Crozier Decl., ¶ 14; *see also* Opp., Ex. C ¶¶ 5, 8 (acknowledging that Plaintiffs did not "determine that [the hyperlinked text] was a functioning hypertext link"); Opp. Ex. D, ¶¶ 5, 8 (same). And they do not (because they cannot) dispute that Labcorp internally referred to the User Agreement as a "EULA." *See* L. Crozier Decl. ¶ 16; *see also* Mot. Ex. E; Mot. Ex. F.

Plaintiffs ***already*** had the opportunity to seek information that would have clarified their confusion about the appearance of the registration webpage, the hyperlinks' functionality, and how Labcorp referred to its own business records. Their failure to do so does not entitle them to further discovery, *see* Opp. at 1, 17, and the record is more than sufficient to compel arbitration, *see Holt v. Pennsylvania*, No. 21-2635, No. 21-2661, 2022 WL 3657183, at *3 (3d Cir. Aug. 25, 2022) ("The court must grant summary judgment if there is not enough evidence to create a genuine issue for trial."); *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 619 (7th Cir. 2024) (rejecting request to "present additional evidence" in opposition to arbitration because "the summary judgment stage . . . does not allow second chances").

**B. The User Agreement And The Updated Agreement Are Not Unconscionable**

Plaintiffs also try to escape arbitration by asserting that their agreements with Labcorp are unconscionable. *See* Opp. at 17-21. As a threshold matter, any question about the unconscionability of the agreements is for an arbitrator, not this Court. The User Agreement and Updated Agreement incorporate the AAA Consumer Rules, which delegate all questions of arbitrability to an arbitrator. *See* Mot. at 18-19; *see also Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 104 (3d Cir. 2020) ("'[I]ncorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent [to delegate arbitrability].'") (citation omitted). Thus, Plaintiffs' arguments "regarding the enforceability of the arbitration agreement" that "do not specifically challenge the validity of the delegation provision" must be resolved by an arbitrator.

*Kirkham*, 2024 WL 1143481, at *5 n.2 (citing *Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 68-72 (2010)); *see also Caruso v. J&M Windows, Inc.*, No. 18-770, 2018 WL 4579691, at *4 (E.D. Pa. Sept. 24, 2018) ("[U]nless a party specifically challenges the unconscionability of the delegation [clause], then this issue should be reserved for the arbitrator."). Plaintiffs' failure to address the delegation clause specifically disposes of their unconscionability arguments.

Indeed, Plaintiffs advance just one challenge specific to the delegation clause, arguing that the User Agreement and Updated Agreement do not incorporate the AAA Rules because they did not use the word "incorporate." Opp. at 2-3. But this ignores that both agreements state that all arbitral disputes will be resolved before the AAA "under its Consumer Arbitration Rules." *See* Mot. Ex. M § 13; Mot. Ex. N § 13; Mot. Ex. R § 14. Numerous courts in this District have held that language like this suffices. *See, e.g.*, *Iezzi v. CrossCountry Mortg.*, No. 23-2827, 2024 WL 37951, at *6 (E.D. Pa. Jan. 3, 2024) (language that parties would resolve disputes "***pursuant to*** AAA's Employment Arbitration Rules and Mediation Procedures" effectively "incorporat[ed] the Rules of the American Arbitration Association") (emphasis added); *Deardorff v. Cellular Sales of Knoxville, Inc.*, No. 19-2642-KSM, 2022 WL 407396, at *10 (E.D. Pa. Feb. 9, 2022) (same where language required disputes be resolved "by final and binding arbitration by JAMS ***under*** its [rules]") (emphasis added). The fact that the arbitration agreement in *Kirkham* also said the arbitral rules were "'incorporated by reference'" is immaterial: the Court did ***not*** hold that this additional language was necessary for incorporation. 2024 WL 1143481, at *2 (citation omitted).

Even if the Court considers Plaintiffs' unconscionability arguments, Plaintiffs "must prove that the [agreement] is both procedurally and substantively unconscionable," *Hodge v. Toyota Motor Credit, Corp.*, No. 1:22-cv-00001-MR-WCM, 2022 WL 2195022, at *6 (W.D.N.C. June 17, 2022); *Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 317 (E.D. Pa. 2017) (same under

Pennsylvania law); *Focus Music Ent., LLC v. Streamify, LLC*, Civil Action No. ELH-18-1241, 2018 WL 6423906, at *16 (D. Md. Dec. 5, 2018) (similar under Maryland law), and they have done neither. Plaintiffs argue that the agreements are procedurally unconscionable because there was a "disparity in bargaining power" between the parties. Opp. at 17. But "bargaining inequality alone generally cannot establish procedural unconscionability." *Westmoreland v. High Point Healthcare, Inc.*, 721 S.E. 2d 712, 717, 218 N.C. App. 76, 81 (N.C. App. 2012); *see also Curtis*, 229 F. Supp. 3d at 320-21 (similar). Nor does use of so-called "boilerplate" terms. *See Market Am., Inc. v. Yang*, 1:17CV897, 2018 WL 3406865, at *9 (M.D.N.C. July 12, 2018) (no procedural unconscionability where arbitration clause was included in a "boilerplate" agreement with small font size executed between parties with unequal bargaining power). Instead, Plaintiffs must also show "'unfair surprise [and] lack of meaningful choice.'" *Wilner v. Cedars of Chapel Hill, LLC*, 773 S.E. 2d 333, 336, 241 N.C. App. 389, 392 (N.C. App. 2015) (citation omitted); *see also Focus Music Ent., LLC*, 2018 WL 6423906, at *17 (no procedural unconscionability where plaintiff failed to show that it "did not have the opportunity to review [the agreement]"). Plaintiffs have not come close to that showing.

Labcorp's Motion demonstrates that Plaintiffs voluntarily agreed to arbitrate this dispute after being presented with a full and fair opportunity to review the User Agreement, which included a prominent warning in its third paragraph that it contained an arbitration provision. *See* Mot. Ex. M at 1; Mot. Ex. N at 1. They were also provided notice when that agreement was updated, and they were given seven days to opt-out of those modified terms. *See* Mot. Ex. M § 3; Mot. Ex. N § 3; Mot. Ex. R § 3. Afterwards, Plaintiffs remained free to terminate their agreements.[4] *See* Mot. Ex. M § 13; Mot. Ex. N § 13; Mot. Ex. R §12. And if they had, Plaintiffs still could have

---

[4] Thus, Plaintiffs' claim that the agreements omit an opt-out period is mistaken. *See* Opp. at 18.

accessed Labcorp services, which are not conditioned on a user's decision to create or maintain a Labcorp Patient account. *See* Opp. at 6 (noting that Plaintiffs obtained Labcorp services for several years prior to creating Labcorp Patient accounts); *see also Jordan v. Petco Health & Wellness Co.*, No. 2:21-cv-1858, 2022 WL 4237519, at *6 (W.D. Pa. Sept. 14, 2022) (explaining that agreement was not procedurally unconscionable where plaintiff "was not required to join [Petco's reward program]" to "make purchases at Petco"). That is not procedurally unconscionable.

Plaintiffs also fail to show any "'harsh, one-sided, and oppressive contract terms'" needed to establish substantive unconscionability. *Mansfield v. Vanderbilt Mortg. & Fin., Inc.*, 29 F. Supp. 3d 645, 653 (E.D.N.C. 2014) (citation omitted); *Porreca v. Rose Grp.*, No. 13–1674, 2013 WL 6498392, at *10 (E.D. Pa. Dec. 11, 2013) (same under Pennsylvania law); *Turner v. Archer W. Contractors, LLC*, No. ELH-17-2228, 2019 WL 2549433, at *10 (D. Md. June 19, 2019) (similar under Maryland law). The Opposition attempts to do so with a volley of scattershot challenges to twelve provisions in the User Agreement. Opp. at 19-20.[5] None make the mark.

The first eight challenges are not specific to the parties' agreements to arbitrate and thus are irrelevant because "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006)). Plaintiffs' ninth and tenth challenges fail because they focus on the arbitration agreements' scope and the fact that they survive the termination of the User Agreement, respectively. That "an arbitration provision is broad does not mean that it is unconscionable," *Trimble v. AT&T Mobility, LLC*, No. 5:23-CV-00038-KDB-DSC, 2023 WL 5493584, at*4 (W.D.N.C. Aug. 24, 2023). And that arbitration obligations survive termination of the parties'

[5] Plaintiffs also argue that the User Agreement is "substantively unconscionable" because it is not "supported by mutual assent." Opp. at 19. But, as set forth above, the record is clear that Plaintiffs were afforded notice of and thus assented to the User Agreement and the Updated Agreement.

agreements is simply the default presumption under controlling precedent. *See Litton Fin. Printing v. NLRB*, 501 U.S. 190, 204 (1991) (explaining there is "a presumption in favor of postexpiration arbitration of matters unless 'negated expressly or by clear implication'") (citation omitted).

Plaintiffs' final two challenges are likewise unavailing. First, Plaintiffs assert that discovery is limited in arbitral proceedings. *See* Opp. at 20; *see also* Mot. Ex. M § 14; Mot. Ex. N § 14; Mot. Ex. R § 13. Yet, limiting discovery is not unconscionable so long as Plaintiffs retain a "fair opportunity to present their claims." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991). Plaintiffs offer no reason to believe that the governing AAA Consumer Rules would preclude them from doing so; nor could they. "[N]o court that has found procedures comparable to those in the AAA rules to impede a plaintiff's 'fair opportunity to present [her] claims.'" *Seme v. Gibbons, P.C.*, No. 19-857, 2019 WL 2615751, at *6 (E.D. Pa. June 26, 2019) (quoting *Gilmer*, 500 U.S. at 31). Second, Plaintiffs assert that the User Agreement is unconscionable because it "[i]mpose[s] an obligation to pay counsel fees on users for representation provided in the arbitration process." Opp. at 20. But the agreements advise only that Plaintiffs "have the right, at [their] expense, to be represented by an attorney of [their] choosing." Mot. Ex. M § 14, Mot. Ex. N § 14; *see also* Mot. Ex. R § 13 (same under Updated Agreement). They do not require Plaintiffs to hire counsel, nor do they stop an arbitrator from awarding certain costs at a later stage of the proceeding. Put differently, the agreements clarify that Plaintiffs can incur the same costs they would "ordinarily be required to bear if [they] were free to bring this action in court." *Alavez v. Brinker Rest. Corp.*, No. EDCV 16-1450 JGB (SPx), 2016 WL 11746260, at *7 (C.D. Cal. Sept. 23, 2016). The provision is unremarkable, not unconscionable.

## CONCLUSION

For the reasons set forth above, Labcorp respectfully requests that the Court grant the Motion, compel arbitration, and stay this action pending the completion of those proceedings.

Respectfully submitted,

Date: September 10, 2024

*/s/ Jasmeet K. Ahuja*
Jasmeet K. Ahuja (PA Bar No. 332093)
HOGAN LOVELLS US LLP
1735 Market Street, Floor 23
Philadelphia, PA 19103
Telephone: (267) 675-4667
Fax: (267) 675-4601
Email: jasmeet.ahuja@hoganlovells.com

Allison Holt Ryan (*pro hac vice*)
Adam A. Cooke (*pro hac vice*)
Aidan J. Coleman (*pro hac vice*)
HOGAN LOVELLS US LLP
555 13th Street NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Fax: (202) 637-5910
Email: allison.holt-ryan@hoganlovells.com
Email: adam.a.cooke@hoganlovells.com
Email: aidan.coleman@hoganlovells.com

*Counsel for Defendant Laboratory Corporation of America Holdings*

**CERTIFICATE OF SERVICE**

I hereby certify on September 10, 2024 the foregoing Defendant's Reply in Support of its Renewed Motion to Compel Arbitration and Stay Proceedings was filed and served electronically on counsel of record. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

*/s/ Jasmeet K. Ahuja*
Jasmeet K. Ahuja